STATE OF NEBRASKA, APPELLEE, v. MERCHANTS BANK (S. A. D. SHILLING, RECEIVER), APPELLANT.*

FILED MAY 21, 1908. No. 15,119.

1. **Evidence:** ADMISSIONS OF COCONSPIRATORS. Admissions made out of court by a conspirator after the complete execution of the conspiracy are not admissible in evidence in an action against his coconspirator for the purpose of establishing conspiracy.

2. **Conspiracy:** EVIDENCE. A conspiracy cannot be established by the admissions alone of a coconspirator who is not a party to the record.

* Rehearing allowed. See opinion, p. 710, *post.*

3. **Evidence**: ADMISSIONS OF COCONSPIRATORS.  Admissions of a conspirator are not admissible in evidence in an action against his coconspirator, unless there is other evidence tending to prove conspiracy.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Reversed.*

*Field, Ricketts & Ricketts,* for appellant.

*B. F. Johnson, contra.*

GOOD, C,

In 1897, in the district court for Lancaster county, the Merchants Bank was adjudged insolvent, and S. A. D. Shilling was appointed receiver to wind up its business. In this case the Chicago Cottage Organ Company, Kate C. Zehrung, and A. J. Campbell intervened and procured the allowance of preferred claims in their favor and against the said bank, aggregating $1,868, with interest from the date of their allowance at 7 per cent.   In 1901, and during the pendency of the receivership proceedings, these parties sold and assigned their preferred claims to W. W. Towle for sums aggregating about $130.   Later Towle transferred these claims to Shilling.   In October, 1903, Shilling, as receiver, filed his final report, which was approved by the court.   Distribution was ordered and made, and the receiver discharged.   There were sufficient funds in his hands to pay all preferred claims in full, and Shilling realized upon the three claims transferred to him about $2,700.   In April, 1906, the three preferred creditors mentioned filed in the district court for Lancaster county a petition entitled as follows:

"Petition in Equity.   State of Nebraska v. Merchants Bank (S. A. D. Shilling, Receiver).   Petition of intervening creditors, Chicago Cottage Organ Co., Kate C. Zehrung, and A. J. Campbell, and preferred creditors of Merchants Bank, to vacate final order of court, and all

48

other orders of court, and vacate order discharging receiver."

In this petition they alleged the appointment of Shilling as receiver, the amount and date of allowance of each of their preferred claims, and charged a conspiracy between Shilling and said Towle to cheat, swindle and defraud the petitioners out of their preferred claims, and alleged that pursuant to this purpose the said Shilling had fraudulently misrepresented the amount of the assets in his hands as receiver, and had represented their claims to be worthless, and that they believed and relied upon these misrepresentations so made in selling and transferring their claims to said Towle. It was also charged that Shilling furnished the money which Towle paid them for their claims. They prayed for the annulment and setting aside of the order of the court approving the final report of the receiver and ordering the discharge of the receiver, and the order directing the distribution of the funds in his hands, and asked for an accounting of the money received by the receiver, and that he be required to pay their said preferred claims in full with interest. A general demurrer to this petition was overruled, and the receiver answered, admitting certain formal allegations in the petition, pleading the statute of limitations, and denying all the other allegations of the petition. Upon a trial the district court found all the issues in favor of the petitioners and against the receiver, set aside the former orders of the court confirming the final report of the receiver and ordering a distribution of the funds and the discharge of the receiver, and ordered the receiver to pay the several preferred claims of the petitioners, but refused them interest from the time of the first order of distribution in 1903. Both parties have appealed.

The defendant contends that the petition is based upon section 602 of the code, and particularly upon the fourth subdivision thereof, which, so far as it is applicable, is as follows: "A district court shall have power to vacate or

modify its own judgments or orders after the term at which such judgment or order was made. * * * Fourth. For fraud practiced by the successful party in obtaining the judgment or order." Section 603 provides that the proceedings to vacate or modify a judgment or order on the grounds mentioned in the fourth subdivision shall be by petition. Section 609 of the code provides that proceedings to vacate or modify a judgment or order for the causes mentioned in subdivision 4 of section 602 must be commenced within two years after the judgment was rendered or order made, unless the party entitled thereto be an infant or a person of unsound mind, and then within two years after the removal of the disability. The petition in this case was filed more than two years after the making and entering of the judgment and the orders sought to be set aside. If, therefore, the petition is brought under section 602 of the code, it is clear that it was filed too late to be of any avail, and that the statute of limitations is a complete defense.

Upon the other hand, plaintiffs contend that their petition is not based upon subdivision 4 of section 602 of the code, but is an original action in equity. Bearing in mind the title to the petition above quoted and the form of the prayer, which asks for the annulment of the judgment and certain orders of the court rendered herein, it would indicate that the appellees had originally intended to proceed under the fourth subdivision of section 602. It does not appear to be material, however, whether plaintiffs originally intended to proceed under section 602 of the code. The petition seems to be sufficient for an original action in equity, and we shall treat it as if it had been so originally intended.

The defendant urges that the action is barred by the statute of limitations, even if it be treated as an original action in equity. It is somewhat doubtful whether the statute of limitations can be urged as a defense by a receiver in an action against him for fraud and conspiracy, if there is sufficient evidence to sustain such a charge.

But whether or not the statute of limitations is available as a defense in this case we do not at this time decide, as the judgment must be reversed for other reasons.

It will be observed that Towle, to whom the assignments were made, is not a party to this proceeding. The case proceeds upon the theory of a conspiracy between Towle and Shilling. The only evidence of any conspiracy is contained in the testimony of two or more witnesses who testify as to admissions made by Towle. The testimony of one Adams contains the principal evidence upon this branch of the case. His testimony is as to conversations had with Towle long after the rendition of the judgment and the distribution of the funds. It is evident that, if any conspiracy existed, the statements of Towle were made long subsequent to it and long after it had been carried out. Under such circumstances, the evidence as to admissions made by Towle was not admissible to prove the fact of conspiracy. The rule applicable to this evidence is laid down in 3 Greenleaf, Evidence (16th ed.), sec. 94, as follows: "The *principle* on which the *acts and declarations of other conspirators,* and acts done at different times, are admitted in evidence against the persons prosecuted is that, by the act of conspiring together, the conspirators have jointly assumed to themselves, as a body, the attribute of individuality, so far as regards the prosecution of the common design; thus rendering whatever is done or said by any one in furtherance of that design a part of the *res gestæ* and therefore the act of all. It is the same principle of identity with each other that governs in regard to the acts and admissions of agents when offered in evidence against their principals, and of partners, as against the partnership, which has already been considered. And here, also, as in those cases, the evidence of what was said and done by the other conspirators must be limited to their acts and declarations made and done while the conspiracy was pending, and in furtherance of the design; what was said or done by them before or afterwards not being

within the principle of admissibility." In *Farley v. Peebles*, 50 Neb. 723, it is said: "What is merely narrative of a past occurrence, or what is merely expressive of a future purpose, would not generally be so admissible; but an act performed, a declaration made, a writing made or delivered, as a part of the matter in dispute, that is, in itself tending to advance the common purpose or object of the alleged conspiracy, is neither hearsay nor merely the admission of one of the parties. It is an overt act in pursuance of the object. From such overt acts of each of the alleged conspirators the jury may, together with other evidence, infer the existence of the conspiracy itself. We are aware that it is the established rule that the acts or declarations of one of the alleged conspirators are not admissible as against the others unless the conspiracy itself be established, in which case the act or declaration of one becomes that of all; and we are aware, also, that it has sometimes been stated that such acts or declarations are not admissible in evidence until the conspiracy itself is first *prima facie* established." The evidence relating to the alleged admissions of Towle was not admissible, because these admissions were made long subsequent to the complete execution of the conspiracy. Without these admissions there is not sufficient evidence to warrant or sustain a finding of conspiracy.

In view of the conclusions which we have reached, we do not think it would be wise to discuss or express an opinion as to the evidence relating to the transactions between Towle and Shilling and between Towle and the plaintiffs. It may be remarked, however, that it is always a reprehensible practice for a receiver to purchase claims that are to be paid out of funds in his hands. The receiver is an officer of the court, and acts in a trust capacity, and the utmost good faith should be required of him in every transaction. The presumption is against any transaction where he purchases outstanding claims from which he reaps a personal profit. The same should

be closely scrutinized, and the good faith of the trans-
action clearly shown.

The cross-appeal of the plaintiffs was based upon the
alleged error of the trial court in refusing to allow any
interest upon the claims of the plaintiffs. In view of the
conclusion that we have reached that the evidence is in-
sufficient to support the judgment in favor of the plaintiff
for the principal of their claims, it is not necessary to
discuss the question raised by the cross-appeal.

Because there is not sufficient competent evidence in
the record to sustain the findings of conspiracy, we recom-
mend that the judgment of the district court be reversed
and the cause remanded for further proceedings according
to law.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing
opinion, the judgment of the district court is reversed
and the cause remanded for further proceedings.

REVERSED.

The following opinion on rehearing was filed February
20, 1909. *Former judgment vacated, cross-appeal dis-
missed, and judgment of district court reversed, except
as to Chicago Cottage Organ Company:*

1. **Receivers:** ACTION FOR DECEIT. A receiver of a defunct bank wrote
to a preferred creditor making positive erroneous statements as
to the condition of the estate, at a time when an employee was
negotiating for the purchase of the preferred claim, at a nominal
sum, which purchase was afterwards perfected, the creditor in
making the sale relying upon the representations made by the
receiver. The claim was afterwards assigned to the receiver,
who attempted to conceal the fact that he had an interest therein.
The receiver afterwards realized sufficient funds to pay the
claims in full. *Held,* Sufficient to permit the creditor to recover
from the receiver on the ground of deceit.

2. **Fraud:** PLEADING: LIMITATIONS. After the discharge of a receiver
a preferred creditor brought suit, alleging facts sufficient to
permit him to recover from the receiver for fraud in procuring

an assignment of the creditor's claim. *Held*, That such action is not controlled by sections 602 and 609 of the code, relating to the manner and time for the vacation or modification of judgments in the court in which they were obtained.

3. Joint assignments of error not good as to all parties who join therein must be overruled.

EPPERSON, C.

The former opinion in this case is published, *ante*, p. 704, to which reference is made for a statement of the facts involved. In our former opinion we said: "The only evidence of any conspiracy is contained in the testimony of two or more witnesses who testified as to admissions made by Towle." Towle was not made a party to the proceeding, but was alleged to have been the receiver's coconspirator in defrauding plaintiffs in the purchase of their preferred claims. As to one of the plaintiffs the author is convinced that the statement above quoted is erroneous. The evidence shows that on April 27, 1901, at which time Towle was negotiating for the purchase of the claim, the receiver wrote to the Cottage Organ Company, one of the interested creditors, in reply to an inquiry stating: "I have realized $2,700, and in the suit against stockholders it has developed that $2,500 of the capital stock is all that is solvent, the remainder having failed and gone through bankruptcy. You will, therefore, see $5,200 is the *total possible* receipts to pay holders of claims, attorney's fees, expenses and receiver's fees. Therefore I do not think holders of claims will ever receive a dollar." On the date of the above letter the receiver had in fact realized $3,969.82, and the statement as to the total possible receipts was erroneous to the extent of $1,111.25. It will be noted that there is nothing in the above quoted letter to indicate that the statements there made were mere predictions, yet we find that on May 27, 1902, the receiver wrote the Organ Company another letter, in which he refers to the statements in his former letter as predictions, giving as his excuse therefor

that he was not allowed as receiver the salary he was assured he would receive. The court had in December, 1900, fixed the salary of the receiver at $50 a month, with a maximum allowance of $2,500. Although there is evidence in the record showing that, in a conversation between the judge of the court in which the receivership matter was pending and the receiver, the judge told him that he would be allowed a greater compensation than had been theretofore fixed. Yet we cannot believe that the receiver was justified at any time in concluding that the court would allow him all of the money realized over and above the expenses as his compensation. His statements were false, and were relied upon by the Organ Company. During the time of the negotiations for these claims Towle was in the receiver's employ assisting in the collection of the assets of the defunct bank. When the receiver obtained the claims from Towle, he caused them to be assigned to a third party. Ink marks were afterwards drawn through these assignments, and vouchers for the payment of the claims were signed by Towle. The receiver took title to the claims from Towle, claiming that they were assigned to him in consideration of certain indebtedness owing by Towle. This indebtedness amounted to between $500 and $600. The amount realized on the claims here involved was about $1,830. We have no reason to doubt that the receiver held this indebtedness against Towle and that it was settled as testified to, but this adds no virtue to the transaction which resulted in the purchase of the claims by Towle. Were we to give this fact significance, it would be to consider Towle's indebtedness to the receiver in the light of an inducement or a motive prompting the receiver to assist Towle in deceiving the creditor. The receiver may possibly have contemplated that the court would allow him a greater compensation sufficient to absorb the assets of the estate; but he had no right to conclude that such would be the case, and, resting upon such conclusion, make positive statements to creditors to their prejudice. There is no

evidence in the record that the creditors other than the Organ Company parted with their claims through any representations made by either Shilling or Towle. Towle proposed to purchase, and they accepted his proposition upon the advice of their respective attorneys, who acted upon their own judgments, uninfluenced by either of the alleged conspirators, and, in so far as their interests are concerned, the judgment of the district court must be reversed.

The assignment was made by the Organ Company to Towle in 1901. The receiver obtained his final discharge October 29, 1903. This action was instituted April 6, 1906, and it is strenuously urged by the appellant that the creditors were proceeding under subdivision 4, sec. 602 of the code, and, therefore, not having instituted the suit within two years from the discharge of the receiver, the proceeding was barred by section 609 of the code. We are convinced that sections 602 and 609 do not apply, except for cases of fraud in obtaining an order or judgment to which the successful party was not entitled. An action based upon fraud may be instituted within four years from the time the fraud was committed or from the time of its discovery. There is nothing in this case showing that any fraud was committed upon the court, or any deceit resorted to in procuring the order discharging the receiver. It is true that in their petition the creditors, after alleging the commission of the fraud in procuring the assignments of their claims, prayed, among other things, that the court set aside the final judgment rendered in the receivership proceedings and vacate the order discharging the receiver. But, in addition thereto, they prayed for an accounting of moneys received by the receiver and for judgment. The creditors did not need to set aside the discharge of the receiver, nor to open up the former proceedings, but could have proceeded against the receiver personally to recover damages for the wrong done. We consider it immaterial that they should ask a vacation of the order of discharge. It was unnecessary

that they sought to make this proceeding supplemental to, and as a part of, the case pertaining to the receivership, inasmuch as they stated a cause of action in equity against the receiver. In *Jennings v. Simpson,* 12 Neb. 558, it is said: "A court of equity possesses the power to make all necessary orders for the control of receivers, referees and commissioners appointed by it, and such power is not limited by the provisions of sec. 602 *et seq.* of the code." Whatever might have been the intention of the creditors with reference to section 602 of the code, they alleged a cause of action sufficient to entitle them to recover against the receiver.

But it is argued that in any event the action is barred by the statute of limitations. The petition alleged that the fraud complained of was not discovered until within a few months prior to its filing. This was a sufficient statement showing that the petition was filed within the time limited. The only plea of the statute of limitations interposed by the receiver in his answer is as follows: "That more than two years have intervened between the time of said discharge and the filing of the petition herein to open said judgment, and the right to open or modify said judgment is barred by the statute of limitations." This is an insufficient plea of the statute of limitations, and would be available only in the event that we should consider that the proceeding instituted by the creditors was brought under the provisions of section 602 of the code.

All the creditors bringing the action joined as cross-appellants in filing assignments of error in this court. Their principal complaint is that the court failed to allow them interest upon their various claims against the receiver. As we view it the Organ Company was entitled to recover the amount of its claim against the receiver, and should have been awarded interest. But, as the other creditors failed to prove that they were entitled to recover, the judgment of the lower court denying them interest was without prejudice; and, as the Organ Company

joined with them in filing assignments of error, the cross-appeal must be dismissed.  It is the rule in this court that joint assignments of error which are not good as to all persons who join must be overruled.  *Levy v. South Omaha Savings Bank,* 57 Neb. 312, and cases there cited.

We therefore recommend that our former opinion be vacated; that the cross-appeal of the creditors be dismissed; and that the judgment of the lower court in favor of the Chicago Cottage Organ Company be affirmed, but reversed and remanded for further proceedings as to Kate C. Zehrung and A. J. Campbell.

DUFFIE, GOOD and CALKINS, CC., concur.

By the Court: For the reasons set forth in the foregoing opinion, the former opinion is vacated, the cross-appeal is dismissed, and the judgment of the lower court in favor of Kate C. Zehrung and A. J. Campbell is reversed and remanded for further proceedings, but affirmed as to the Chicago Cottage Organ Company.

                                       JUDGMENT ACCORDINGLY.