CORA M. DAVIS ET AL., APPELLEES, V. FRED F. BORLAND ET AL., APPELLANTS.

FILED JANUARY 23, 1909.    No. 15,414.

1. Intoxicating Liquors: ACTION FOR DAMAGES: PLEADING: EVIDENCE. In an action against the vendors of intoxicating liquors to recover damages suffered from the acts of an intoxicated person, it is sufficient, under the provisions of section 7168, Ann. St. 1907, to plead and prove that the defendants sold or gave intoxicating liquors to the intoxicated person, from whose act the damage arose, on the day or about the time the injuries to the plaintiff were received. In such cases the statute by its terms supplies allegations and proofs required in other actions for damages.

2. ———: ———: INSTRUCTIONS. In an action for loss of means of support caused by the death of a person, it is error for the court to instruct the jury that such loss began upon the death of the deceased person, and would continue as to one of the defendants "until such time as he would have lived had he been permitted to reach the end of his natural life, as indicated by the tables of expectancy, which have been introduced and received in evidence in the case," and especially is this true when there is tesimony in the case tending to show a serious injury suffered by the deceased previous to any sale of liquors made by the defendants, and which would naturally tend to shorten his life or to cause his insanity.

APPEAL from the district court for Jefferson county: WILLIAM H. KELLIGAR, JUDGE.  *Reversed.*

*Heasty & Barnes,* for appellants.

*A. G. Wolfenbarger* and *W. J. Moss, contra.*

DUFFIE, C.

The plaintiff, for herself and as next friend of her two minor children, brought this action against the defendants Borland and Greve, and the sureties upon their several liquor license bonds, to recover for loss of means of support caused by the death by suicide of Llewellyn H. Davis, the husband and father of the plaintiffs.  The petition, after alleging that the defendants Borland and Greve had been licensed to sell intoxicating liquors and had executed the bonds sued upon, proceeds to state: "That Davis immediately thereafter commenced to drink in their saloons, and that said defendants furnished him intoxicating liquors in sufficient quantities to produce his intoxication; that in consequence his mental condition became seriously impaired as a result of his continued debauchery until, on or about the 15th day of July, 1904, the said defendant saloon-keepers, and each and all of them, separately and severally, by themselves and respective bartenders, agents and servants at their respective places of business in the said city of Fairbury, sold, gave and furnished to said Llewellyn H. Davis intoxicating liquors and drinks in sufficient quantities to produce his intoxication, and did thereby cause and produce his intoxication, and while under the influence of the intoxicating liquors so sold and furnished to him by said defendants, and each of them, the said Llewellyn H. Davis became irresponsible, despondent, and deranged in mind, and was incapable and unable to properly care for, control or protect himself, and while in said despondent, irresponsible and deranged condition, and while so intoxi-

cated, he, the said Llewellyn H. Davis, took, and with his own hand administered to himself, a deadly poison, to wit, carbolic acid, from the effect of which he then and there came to his death."

A demurrer to this petition, upon the ground that it failed to state a cause of action against the defendants, was overruled by the trial court, and this is the first error assigned. It is urged with great earnestness that the petition fails to show any connection between the act of the defendants in furnishing the deceased with intoxicating liquors and his suicide. In other words, that it is not alleged that the taking of poison which resulted in his death was caused by the sale of intoxicating liquors by the defendants. That there may be no misunderstanding, we quote from the defendants' brief upon this point: "The mere fact that a man kills another while intoxicated fixes no liability on the saloon-keeper. Liability attaches only when the jury are satisfied that intoxication caused or contributed to cause the homicide. If Davis killed himself while intoxicated, there is no liability, unless the jury conclude that the drinking of intoxicating liquors caused or contributed to cause the suicide." There can be no doubt that as a legal proposition the above quotation from the brief of the defendants is a correct statement of the general rule of law, and that in ordinary cases it is well settled that a petition, in order to state a cause of action, should set forth every essential fact which the plaintiff must prove in order to entitle him to recover. Our legislature, however, has created an exception in this respect in cases brought against the vendor of intoxicating liquors for damages sustained in consequence of intoxication arising from the sale thereof. Section 7168, Ann. St. 1907, is in the following language: "On the trial of any suit under the provisions hereof, the cause or foundation of which shall be the acts done or injuries inflicted by a person under the influence of liquor, it shall only be necessary to sustain the action to prove that the defendant or defendants sold or gave liquor to the person so intoxi-

cated, or under the influence of liquor, whose acts or injuries are complained of, on that. day or about that time when said acts were committed or said injuries received; and in an action for damages brought by a married woman or other person whose support legally devolves upon a person disqualified by intemperance from earning the same, it shall only be necessary to prove that the defendant has given or sold intoxicating drinks to such person during the period of such disqualification." This section of itself supplies allegations and proof in respect to matters that are essential in the ordinary action.  When damage has been suffered at the hands of an intoxicated person, the statute, in an action brought against the vendor to recover for such damages, raises a presumption in favor of the plaintiff that the sale which caused the intoxication, or which contributed thereto, was the cause of the injury; and, as stated in *Nowotny v. Blair,* 32 Neb. 175: "It was sufficient to plead and prove. that the defendant sold or gave intoxicating liquor to the intoxicated person 'whose acts or injuries by him inflicted are complained of, on that day, or about the time when the acts were committed, or the injuries to the plaintiff were received.'" We conclude, therefore, that, under the statute and our former opinions, the petition states a cause of action, and that the demurrer thereto was properly overruled.

Error is further assigned in giving instructions 3 and 10 covering the measure of damages. In the third instruction the jury are told "that the loss of the means of support to said wife and children became permanent by the death of the husband and father, and the period covered by such loss began at the time of the death of the husband and father, and continued, as to the minor children, until they became of age, and as to the wife, from the death of the husband until such time as he would have lived had he been permitted to reach the end of his natural life, as indicated by the tables of expectancy, which have been introduced and received in evidence in

the case." The tenth instruction embodied the same prin-
ciple, except that the jury were told that in making their
calculation they were to use the Carlisle table of expect-
ancy of life, which has been introduced in evidence on
the trial. The objection to these instructions is based
upon the fact that the jury were restricted to the tables
of expectancy of life in determining the probable dura-
tion of Davis' life in ascertaining the damages sustained.
There are numerous cases to the effect that tables of ex-
pectancy of life, while admissible for the purpose of show-
ing the probable duration of the life of a deceased party,
are not controlling in their effect as evidence, but that
many other facts should be considered by the jury. The
proper rule is stated in *City of Friend v. Ingersoll,* 39
Neb. 717. It is there said: "The Carlisle table of ex-
pectancy of life is competent and admissible in evidence
as bearing upon and tending to prove the expectancy of
life, but not conclusive of the question, and is to be re-
ceived and considered by the jury as any other evidence,
and subject to the same rules as to its weight and suffi-
ciency as other testimony; and its statement as to ex-
pected duration of life may be varied, strengthened,
weakened, or entirely destroyed by other competent evi-
dence on the question of the expected continuance of life
of the injured party, such as testimony pertaining to the
health of the party at the time of the injury upon which
the action is based."

It is established by the evidence that about ten years
previous to the death of Davis, he met with an accident,
which resulted in the fracture of his skull at the base
of the brain, producing his insanity, on account of which
he was confined for a time in an insane hospital of the
state. There was testimony, also, to the effect that a
recurrence of his insanity might take place at any time
without any new or intervening cause. In this condition
of the case an instruction which in effect told the jury
that they were to be guided by the Carlisle table of ex-
pectancy of his life and his earning capacity was erro-

neous and misleading. The jury returned a verdict for $1,750, and it is insisted that the instruction, if erroneous, was, considering the amount of the verdict, without prejudice to the defendants, the claim being made that the evidence established that the deceased contributed about $1,000 a year to the support of the plaintiffs. The partner of the deceased testified that the gross receipts from their business for the seven months previous to the death of Davis was from $175 to $200 a month, and their expenses from $50 to $75 a month. As said in *Greenwood v. King,* 82 Neb. 17: The damages "should have been ascertained by the jury under proper instructions. To hold that the errors complained of were without prejudice in this case would be equivalent to saying that the jurors were infallible, and that, too, * * * under instructions which their oaths required them to follow, and which directed that the damages be measured by a broad and erroneous rule." We must presume that the jury followed the instructions of the court, and that they agreed on the amount of support which Davis contributed to his family each year, and then multiplied that by the years of his expectancy.

For the error of the court in directing an erroneous measure of damages, we recommend a reversal of the judgment.

EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

REVERSED.