G. A. ENOS ET AL., APPELLANTS, V. A. L. HANFF, APPELLEE.

FILED JANUARY 30, 1914.   No. 18,195.

Intoxicating Liquors: LICENSE: CONTROL OF BUILDING BY MANUFAC-
TURER.   Under the act making it unlawful to sell at retail intoxi-
cating liquors in a building owned or controlled by a manufacturer
of beer, the owner's conveyance of a building, so owned or con-
trolled, to a grantee not engaged in that business does not make
the premises a lawful place for a licensed saloon, where grantor
retains control of the building.  Comp. St. 1911, ch. 50, sec. 30e.

APPEAL from the district court for Stanton county: GUY T. GRAVES, JUDGE.  *Reversed with directions.*

*G. A. Eberly,* for appellants.

*W. W. Young* and *A. R. Oleson, contra.*

ROSE, J.

The question to be determined is the validity of a license to sell intoxicating liquors in the city of Stanton. A. L. Hanff is licensee, and G. A. Enos and others are re-monstrators.   From the municipal action granting the license, remonstrators appealed to the district court, where the license was sustained.   The record of the pro-ceeding is now presented here for review by appeal from the district court.

One of the objections to the license is that it was issued in violation of the Gibson act (laws 1907, ch. 82), which makes it unlawful to conduct a saloon in a building owned or controlled by a manufacturer of beer. Comp. St. 1911, ch. 50, sec. 30e. It is conceded by remonstrators that the Independent Realty Company, which is not a manufacturer of beer, holds title to the building wherein licensee is engaged in selling intoxicating liquors, but it is insisted that the building is nevertheless owned or controlled by the Storz Brewing Company, a manufacturer of beer. Licensee frankly admits that prior to the passage of the Gibson act the building was owned by the Storz Brewing Company, but he insists that, for the purpose of complying with the law, and without any intention of evading it, the property was transferred with many other pieces of real estate, which had been used in different parts of the state for saloon purposes, to the Independent Realty Company of Omaha, a corporation organized in June, 1907, after the Gibson act was passed and approved, but before it went into effect July 5, 1907. Comp. St. 1911, ch. 50, sec. 1. There is direct testimony on part of stockholders of the Independent Realty Company that, in incorporating it and in taking title to real estate formerly owned by the Storz Brewing Company, the transactions were all conducted in good faith and that the property so transferred is not owned or controlled by a manufacturer of beer.

It would be unusual for those who participated in the incorporation of the new company, or in the transfer of the property of the old, to testify frankly in direct terms to an intention to violate the law. The transactions themselves must be scrutinized in the light of all of the circumstances, giving due weight to forms and to evidence of good intentions. An issue presented by the remonstrance to the licensing tribunal required the determination of this question: Is the building in which the saloon is to be conducted controlled by a manufacturer of beer? That it was so controlled before the passage of the Gibson act is admitted. The transfer of title did not change the busi-

ness to which the property had been devoted. The managing officer of the grantee testified that he had no offer to lease the building in question for any other purpose and that he presumed its use for a saloon would be continued. On premises purchased from the Storz Brewing Company by the Independent Realty Company in many different places in the state, Storz beer had been generally kept for sale. A purpose on the part of licensee to continue the sale of the products of the Storz Brewing Company under his license may fairly be inferred. The business interests which prompted the brewer to purchase a great number of saloon sites in different localities were the same before and after the passage of the Gibson act and before and after the transfer. It was understood that the new company should respect the leases of the old. Shares of stock of the Storz Brewing Company, each of the par value of $100, were issued as follows: To George Tierney, one; to John Buck, one; to Charles F. Weymuller, one; to Adolph Storz, one; to Gottlieb Storz, 3,061. The five stockholders named are directors. Gottlieb Storz is president, and Charles F. Weymuller, secretary and treasurer. Shares of stock of the Independent Realty Company, each of the par value of $100, were issued as follows: William F. Webber, one; Maggie Buck, one; Minnie G. Storz, 3,058. The three stockholders named are directors. Minnie G. Storz is president, Maggie Buck, vice-president, and William F. Webber, secretary and treasurer. The president of the Independent Realty Company is the wife of the president of the Storz Brewing Company. The husband of the vice-president of the Independent Realty Company is the brew-master of the Storz Brewing Company, and a cousin of Minnie G. Storz. For four years the secretary and treasurer of the Independent Realty Company did general office work for the Storz Brewing Company, and did not sever his relations with his employer until June 1, 1907. According to the testimony of Maggie Buck, she was told by Minnie G. Storz at the time of the organization of the Independent Realty Company that under the new law the Storz Brew-

ing Company could not hold the property used for saloon purposes, and that Gottlieb Storz wanted the three persons who became the incorporators of the Independent Realty Company to take the property. A few days before the transfer from the old corporation to the new, the Storz Brewing Company declared a dividend of 55 per cent.—an unusual transaction. In the Storz Brewing Company, Gottlieb Storz is the controlling factor. His wife, on the face of the new organization, controls the Independent Realty Company. The husband and the wife control both corporations. Within the meaning of the Gibson act, does the Storz Brewing Company, a manufacturer of beer, still control the building wherein A. L. Hanff is licensed to sell intoxicating liquors in the city of Stanton? The domestic relations between Gottlieb Storz, president of the Storz Brewing Company, and his wife, Minnie G. Storz, president of the Independent Realty Company, are harmonious. In a business sense the interests of the controlling factors in both corporations are identical. Where the financial interests of husband and wife are thus united, the court, in furtherance of a public policy established by the legislature, will look beyond the legal entity of a corporation to the relations of the individuals behind it and enforce the law according to its terms. Legislative emancipation of married women in regard to property and business did not terminate a husband's natural influence over his wife, where marital relations are ideal. In this view of the law, when all of the circumstances are considered, the building in which the licensing tribunal of Stanton attempted to legalize the sale of intoxicating liquors is still controlled by a manufacturer of beer, within the meaning of the Gibson act. In reaching this conclusion none of the evidence tending to establish the good faith of the transfer, and the purpose of the incorporators to obey the law, has been overlooked.

The judgment of the district court is reversed and the cause remanded, with directions to cancel the license.

REVERSED.

LETTON and FAWCETT, JJ., not sitting.

HAMER, J., dissenting.

The principal question in this case would seem to be whether the license to sell liquor in the particular building mentioned was properly granted. Under the provisions of the act of 1907, known as the Gibson act (laws 1907, ch. 82), no license for the sale of liquors by retail may be granted by the corporate authorities of any city in a *building owned or controlled* by any manufacturer or wholesaler of intoxicating liquors. In this case the legal title of the lot and building described in the application for the license is vested in the Independent Realty Company. It is claimed that the Independent Realty Company is a holding company created by the Storz Brewing Company, or those interested in that company, and that the purpose of the conveyance to the Independent Realty Company was to avoid the provisions of the law and to defeat the purpose of the Gibson act. There was a trial in the district court for Stanton county and the judgment of that court was for the license. It should be remembered that in all cases of this character the findings of the district judge, who is generally acquainted in the neighborhood and has an opportunity to learn the character of those seeking the license, is entitled to careful consideration. It is contended that the evidence shows that just prior to the taking effect of the Gibson act the Storz Brewing Company was the owner of a large amount of real estate located in the different towns, cities and villages of the state. It is also contended that a large part of this real property was occupied by retailers of intoxicating liquors who got their supplies from the brewing company.

Charles F. Weymuller, the secretary of the corporation, testified that the Storz Brewing Company had no contracts with their tenants which compelled the tenants to purchase the Storz beer. He, however, is of the opinion that the tenants were willing to take the products of the Storz Brewing Company to the exclusion of other beers.

This, of course, might be without any agreement with either the brewing company or the realty company. The brewing company was largely owned by Gottlieb Storz,. who held 3,061 shares of the stock. He held all the shares except four. The vice-president of the realty company, Mrs. Buck, testified that the realty company was formed at the instance of Gottlieb Storz. She testified that she was told by Mrs. M. G. Storz that under a law which had been recently passed by the legislature the Storz Brewing Company could no longer hold its saloon buildings and that her husband, Gottlieb Storz, desired that she, his wife, and Maggie Buck and William F. Webber form a corporation to take over the real property of the brewing company. Mr. Webber was an employee of the brewing company until June 1, 1907. After that he became an employee of the Independent Realty Company. The real estate of the brewing company was conveyed to the Independent Realty Company. The testimony shows that on the 28th of June a dividend of 55 per cent. was declared by the Storz Brewing Company. This had never been done before. It is claimed that this immense dividend was a result of the sale of the real estate held by the Storz Brewing Company to the Independent Realty Company. It is argued that this 55 per cent. dividend was used by Storz through his wife to finance the Independent Realty Company. The testimony of Mrs. Buck concerning what Mrs. Storz told her is not good evidence so far as the Storz Brewing Company is concerned. It is the good faith of that corporation that is on trial. If it has sought to evade the law, then that fact should be shown by competent evidence. It is hearsay when Mrs. Buck testifies to what Mrs. Storz told her concerning the purpose of the Storz Brewing Company. The evidence in a case of this kind should be competent. There is no presumption against the brewing company because of what Mrs. Buck might say concerning an alleged communication received from Mrs. Storz. (a) "Admissions of a conspirator are not admissible in evidence in an action against his coconspirator, unless there is other evidence

tending to prove conspiracy." *State v. Merchants Bank*, 81 Neb. 704, 81 Neb. 710. (b) "Before the acts and declarations of a conspirator are entitled to be considered as evidence against his associates, the conspiracy itself must be established; but the order of proof is a matter within the discretion of the trial court." *O'Brien v. State*, 69 Neb. 691. Section 476 of the criminal code reads: "In trials for conspiracy, in cases where an overt act is required by law to consummate the offense, no conviction shall be had unless one or more overt acts be expressly alleged in the indictment, nor unless one or more of the acts so alleged be proved on the trial; but other overt acts not alleged in the indictment may be given in evidence on the part of the prosecution."

Section 7168, Ann. St. 1907, regulates the amount of proof required in an action to recover damages for injuries received while under the influence of liquor. If less evidence is required to maintain such an action, it does not apply to this sort of a case.

In *Davis v. Borland*, 83 Neb. 281, it is said: "In an action against the vendors of intoxicating liquors to recover damages suffered from the acts of an intoxicated person, it is sufficient, under the provisions of section 7168, Ann. St. 1907, to plead and prove that the defendants sold or gave intoxicating liquors to the intoxicated person, from whose act the damage arose, on the day or about the time the injuries to the plaintiff were received. In such cases the statute by its terms supplies allegations and proofs required in other actions for damages." In the instant case the statute supplies nothing. The case is to be tried as any other case is tried. "The burden of sustaining the affirmative of an issue involved in an action does not shift during the progress of the trial, but is upon the party alleging the facts constituting the issue, and remains there till the end." *Vertrees v. Gage County*, 75 Neb. 332; *Rapp v. Sarpy County*, 71 Neb. 382. A corporation organized under the laws of this state which engages in a business forbidden by statute or unlawful as against public policy may be deprived of its charter and dissolved

by a proceeding in *quo warranto* under section 715 of the code. *State v. Nebraska Home Co.*, 66 Neb. 349.

It is undoubtedly true that, where the forms of corporations are made use of for the purpose of defeating the ends of justice, such forms will be disregarded. It is said in the argument for appellants that when the notion of legal identity is used to defeat public conveyance, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons, and that where one corporation is organized and is owned by the officers and stockholders of another the interest between the two corporations becomes identical, and that they may be so considered if justice requires it. Mr. Storz' wife appears to have been the principal owner of the stock in the realty company. It would not be strange if the realty company had been organized expressly to enable it to avoid the conditions of the statute. At the same time we are not at liberty to jump to a conclusion not warranted by the evidence, and that conclusion should not be reached unless the evidence sustains it.

Mrs. Storz became the leading stockholder in the Independent Realty Company. Seven other stockholders held one share each in the company. Before the license should be denied to the building in question there should be evidence to establish the bad faith of the officers or manager of the Independent Realty Company. It is shown by the evidence that the keg beer sold in the building was Storz beer, but other kinds of beer were kept for sale. The other kinds were bottled beer. It is argued in the appellants' brief that the interests of Gottlieb Storz and his wife in the brewery and in the realty company are essentially identical. *Lusk v. Riggs*, 65 Neb. 258, and *Powell v. Morrill*, 83 Neb. 119, are cited by counsel for the appellants to show that this court recognizes the identity of the interest which exists between a wife and her husband in business matters. *Lusk v. Riggs, supra*, was a case where a debtor alleged to be in failing circumstances made a transfer of his property to near relatives. It was held in such case that the burden of proving a

sufficient consideration and good faith in the transfer was upon the defendants. In that case the entire mercantile stock of an insolvent firm was transferred apparently to avoid the payment of a debt. It was held to be transferred to avoid an execution on a judgment rendered in favor of one of the firm's creditors. The trial court in that case excluded all inquiry into the organization and conduct of the business of the new corporation. After reading the evidence, Commissioner Oldham, who prepared the opinion of this court, said that the corporate body looked like a creature "conceived in sin and brought forth in iniquity." In that case there were other conveyances made without any consideration whatever. There were badges of fraud in evidence from every angle of view, and this court held that the evidences of fraud were sufficient. In *Powell v. Morrill, supra,* there was a petition for a liquor license where, in order to get a sufficient number of freeholders to qualify as petitioners, there was a conveyance of a lot in an addition to a town where this court had previously held that the addition was laid out and maintained "in the interest of the liquor traffic and for the sole purpose of furnishing lots for colorable freeholders to sign petitions." Also, in that case the wife of the applicant signed his petition. It was held that she did not pay any consideration for the lot, and also that she never claimed title to the real estate. We do not think the cases cited justify the conclusion in this case that the organization of the Independent Realty Company was in bad faith, and that as a matter of fact it held the property in trust for the Storz Brewing Company with a view of enabling that company to occupy the real property of the Independent Realty Company. If it had been shown by competent evidence that the realty company had a monopoly of the business of the Storz Brewing Company— that is, that the realty company furnished to the brewing company many places in which to sell beer and intoxicating liquors—then there would be some basis upon which to reach the conclusion that both the realty company and the brewing company were acting in bad faith. The mere or-

ganization of the realty company with a view that it should become the grantee of the real property of the Storz Brewing Company would not of itself be any reason for the condemnation of either the Storz Brewing Company or the realty company. The purpose may have been to receive title to the property with a view of selling it at retail to whomsoever might buy. It may be generally to furnish places of business of all kinds—dry goods stores, grocery stores, butcher shops, and other places of a commercial character. There does not appear to be any affirmative evidence that the realty company was not organized for such a purpose as this, which is a good enough purpose. There is no evidence of an intention to violate the law. The element of bad faith seems to be wholly lacking. It is easy to jump at the conclusion that the only purpose was the purpose to do a wrong. I submit that a liquor license case should be heard and determined by the same rules of evidence that are made to apply to other cases, and to establish an unlawful purpose there should be sufficient evidence of a convincing character, and circumstances which merely cast suspicion upon the parties do not go far enough.

After a careful reading of the evidence, I am unable to reach the conclusion that any bad faith is established by the proof. It may be the fact that the realty company was organized for the purpose of taking over the real property of the Storz Brewing Company, but unless it was done with the further purpose of furnishing the Storz Brewing Company places in which to do business, and have their customers, then there is no violation of the law. I am unable to reach the conclusion contained in the majority opinion, and regret that I am compelled to dissent.